Pamela ALLEN,

v.

TOBACCO SUPERSTORE, INC., et al.

No. 5:02CV00379GH.

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

June 16, 2005.

Eugene Hunt, Hunt & Harris Law Firm, Pine Bluff, AR, for Plaintiff.

Henry P. Julien, Jr., Kuliman Firm, Robert P. Lombardi, New Orleans, LA, Roy C. Lewellen, Lewellen & Associates, Marianna, AR, for Defendant.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, JR., District Judge.

Plaintiff, Pamela Allen (Allen), brings this action under Title VII and 42 U.S.C. § 1981 alleging that defendants discriminated against her on the basis of her race (black) and retaliated against her for filing a charge with the Equal Employment Opportunity Commission (EEOC) in failing to promote her and in discharging her on January 2, 2004. The Court originally *sua sponte* set the case for a jury trial, which was held on August 24, 2004 to September 1, 2004. On September 1st, the twelve person jury found in favor of plaintiff on her claim that defendants discriminated against her on the basis of her race in failing to promote her.[1] The jury returned a verdict of $23,100.00 in compensatory damages and $100,000.00 in punitive damages.

The Court subsequently vacated the jury verdict, finding that it was error to *sua sponte* order a jury trial when neither party had requested one. The Court, however, found that it had discretion to call an advisory jury *see* Fed.R.Civ.P. 39(b), and that therefore it would consider the jury as advisory.

Tobacco Superstores, Inc. ("TSI") operates retail stores which sells tobacco and various related products. Allen was hired as a clerk at the Tobacco Superstore in Dumas, Arkansas, on May 19, 2001, with a salary of $5.25 per hour.[2] Jo Bearden (Bearden), the area supervisor, promoted Allen to assistant manager at the Dumas store on July 23, 2001, with a raise in pay to $6.25 an hour. The manager of the Dumas store at the time was Phyllis Lovell, who is white.

On December 24, 2001, Allen entered the office of the Dumas store and overheard Lovell complaining about Allen to Larry Cobb (who is white), the retail operations manager of TSI. Allen had complained to Lovell about Lovell giving another employee more hours than she gave to Allen. Allen overheard Lovell complaining to Cobb that Allen thought she was running the store. Allen and Lovell began arguing, passing the telephone back and forth, while they spoke with Cobb. Cobb stated that he heard the two speaking very loudly, and that he found the conduct of the two management employees to be unprofessional and unacceptable. He was also concerned that there were customers in the store who overheard the argument. Cobb, who was Bearden's supervisor, contacted Bearden and instructed her to go to the store on December 26th and terminate both Lovell and Allen.

There is a dispute as to whether Allen was actually terminated on December 26th. Allen states that she was never terminated and that Bearden transferred her to the McGehee store to work as a cashier, with the promise that Allen could come back to the Dumas store after "this mess was taken care of." Cobb and Bearden testified that Allen was, in fact, terminated but that Allen asked to be trans-

---

1. The jury found in favor of defendants on Allen's claims of retaliation and termination due to her race.

2. Defendants argue that Allen was an employee of HEK, Inc., which they allege is a separate corporate entity. The Court will address the issue of HEK's status later; for now, the Court will refer to Allen's employer as TSI.

ferred to the McGehee store rather than be terminated. Cobb and Bearden agreed to the transfer after determining that a cashier position was open in McGehee. Allen contends that she would not have asked to be transferred to a store that required her to travel more than 30 miles each day.

Further complicating the factual dispute is Allen's contention that Lovell was actually fired for failing to make a bank deposit on December 24th. On December 24, 2001, the security camera at the Dumas store showed Lovell leaving the store with the bank deposit; however the bank security camera showed that Lovell never made or attempted to make a deposit. Bearden reported the theft of $1115.08 by Lovell to the Dumas Police Department on January 10, 2002 and an affidavit for Lovell's arrest was sworn on January 16, 2002. A warrant for Lovell's arrest for the theft of property was issued on January 28, 2002.

According to the evidence at trial, TSI did not learn about Lovell's failure to make a bank deposit until after Lovell was fired on December 26th. Thus, the Court cannot find that Lovell was fired for the theft of store funds. Rather, the evidence establishes that she was fired for the incident which occurred on December 24th.

The evidence is inconclusive as to whether Allen was in fact terminated on December 24th. There is nothing in Allen's personnel file to indicate that she was terminated. Bearden said she terminated Allen, although the only reference to the incident was a form completed by Bearden on December 26, 2001, stating "move to Store # 60 as casheir [sic] to $6.25 pr hr. 12-26-01 per Larry." It is immaterial whether Cobb and Bearded actually terminated Allen on December 24th. What is clear is that after some consideration, Cobb and Bearden decided to allow Allen to work in the McGehee store. The infer-

ence flowing therefrom is that Cobb and Bearden did not find Allen's behavior so egregious that she could not remain as an employee. A review of the videotape of the incident reveals that there were not any customers present during the exchange between Lovell and Allen.

On December 27th, the day after Allen was transferred to the McGehee store, Kelly Edward Morgan, who is white, was selected for promotion to manager of the McGehee store. Morgan was married to Allen's nephew. Bearden stated that she did not interview Morgan for the position and that Morgan did not complete an application for the position. In fact, the promotion came about as a result of an argument between Becky Smith, who was the manager of the McGehee Store and Morgan, who was a cashier at the time. The argument occurred in the store, in the presence of customers, and lasted about ten minutes, although Morgan stated that she didn't raise her voice. Alice Williams, the assistant manager, suggested that Morgan speak to Bearden about the incident. Williams and Morgan went to the Dumas store to talk to Bearden. Bearden had words with Smith on the phone, and Williams asked Bearden if she should begin training Morgan as the store manager. The Court notes that neither Cobb nor Bearden took any disciplinary action against Smith and Morgan, both of whom are white, when they were involved in a verbal dispute.

Margie Hill, who is white, was hired as the manager at the Dumas store to replace Lovell. Tamara L. White, who is white, was hired on January 15, 2002, to replace Allen as assistant manager at the Dumas store. White was terminated on February 18, 2002, for telling customers to go to other stores where cigarettes were cheaper. She even told one customer that she would refund his money so that he could

purchase the same product at a lower price at another store.

On March 20, 2002, Allen filed a charge with the EEOC. She alleged that TSI discriminated against her on the basis of race when, in January 2002, it hired two white females as the manager and assistant manager who were less qualified than Allen was. She also contended that she complained to Bearden about racial remarks made by Lovell and that as a result she was demoted from assistant manager to clerk and assigned to work at McGehee. She further alleged discrimination when on February 25, 2002, TSI hired a white female as assistant manager at the Dumas store. She also alleged wage discrimination. The EEOC issued Notice of Right to Sue on July 31, 2002.

Allen filed a lawsuit on October 15, 2002, alleging that TSI discriminated against her on the basis of race when it transferred her to McGehee to prevent her from becoming store manager at the Dumas store. She further alleged that manager vacancies have occurred at the Dumas store but that TSI refused to promote Allen to manager. She alleged that she was subjected to a hostile work environment at both the Dumas and McGehee stores.[3]

Allen continued to work at the McGehee store as a cashier. Morgan continued as manager of the McGehee store until November 22, 2002. Morgan was terminated because she had overdrafts on checks she submitted to the store in payment of petty cash she had taken and for not working the hours she was supposed to work as store manager. After terminating Morgan, Bearden hired Jeannette Goggans, a white female. Goggans was not an employee of TSI, and was not familiar with the operations of TSI.

Allen filed an amended complaint on January 23, 2003. In addition to the previous allegations, Allen alleged that TSI refused to promote her to the McGehee store manager position because of her race and in retaliation for filing an EEOC charge. She further alleged that TSI reduced her work hours in December 2002 in retaliation for the EEOC charge and because of her race.

During the time Allen was employed at McGehee, she went to school. The managers at the store attempted to accommodate Allen's school schedule. On January 2, 2004, Allen complained about her work schedule to Goggans. According to Allen, she had left a note for Goggans requesting that she be allowed to work different hours since she was on semester break. Goggans said she had not seen the note. Allen continued to be agitated and confront Goggans. At some point Goggans told Allen that if she did not calm down she could go home. Allen asked Goggans a number of times if she was being fired to which Goggans repeatedly said no.

After Goggans told Allen that she could go home if she didn't like what was happening, Allen continued to perform her duties as cashier for over an hour without further incident. Allen then received a telephone call from her attorney. After speaking with her attorney, Allen picked up her purse, and went back to the store office to talk to Goggans. There is some dispute as to what happened, however, it is undisputed that Goggans never told Allen that she was terminated.

Bearden, Cobb and Goggans all attempted unsuccessfully to contact Allen by telephone. Allen subsequently obtained employment with another company and about two weeks after the January 2nd incident,

---

3. On January 26, 2004, the Court granted summary judgment on the hostile work environment claim.

she returned to the McGehee store as a representative of her new employer. Goggans told Allen to call Cobb, however, Allen never contacted anyone from TSI.

On January 15, 2004, Allen filed a motion for leave to amend her complaint to add race and retaliation claims regarding the termination. Leave was granted and on March 1, 2004, Allen filed her second amended complaint. Allen was also granted leave to add HEK, Inc. as a party.

*Promotion Claims*

■ To establish a claim of failure to promote based on racial discrimination, Allen must prove that: " '(1) that she is a member of a protected group; (2) that she was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) that despite her qualifications, she was rejected; and (4) that other employees of similar qualifications who were not members of a protected group were promoted at the time plaintiff's request for promotion was denied.' " Under the McDonnell Douglas framework, "after a plaintiff makes a prima facie showing of liability, the employer must produce evidence that it had a legitimate, nondiscriminatory reason for its actions. If the employer meets this burden of production, then the burden shifts to the plaintiff to show that the employer's actions were a pretext for discrimination." *Lyoch v. Anheuser–Busch Companies, Inc.* 139 F.3d 612, 614 (8th Cir.1998)(quoting *Marzec v. Marsh,* 990 F.2d 393, 395–96 (8th Cir. 1993))

■ TSI contends that Allen's promotion claims must fail because she never applied for or indicated a desire for a promotion. Cases have held that a formal application is not "required to establish a prima facie case if the job opening was not officially posted or advertised and either (1) the plaintiff had no knowledge of the job from other sources until it was filled, or (2) the employer was aware of the plaintiff's interest in the job notwithstanding the plaintiff's failure to make a formal application." *Chambers v. Wynne School Dist.* 909 F.2d 1214, 1217 (8th Cir.1990)

The evidence reveals that TSI did not rely on applications or requests by employees for promotion. Vacancies were not announced or posted but were filled quite often by word of mouth. In several instances, TSI had asked its employees if they were interested in a management position. For example, Morgan was promoted to manager at the McGehee store in December, 2001, although Morgan had never even told Bearden that she wanted to be a manager.

In support of its position that individuals promoted had filled out applications, TSI produced at trial a number of applications of individuals discussed above. The applications of Tamara White, Kelly Edward Morgan, and Jeanette Goggans were not contained in their personnel files, although the applications of Allen and another black employee, Diane Darrough, were part of their personnel files. At least one of these applications is itself suspect. Morgan's application is dated May 30, 2001; yet attached to it is a typewritten sheet stating that she worked at Tobacco Superstore # 60 until December 27, 2001 as a cashier. Nowhere on the application does Morgan indicate that she is applying for a managerial position. Furthermore, TSI admitted that candidates for promotion did not have to fill out any application so that it would not have been necessary for Allen to do so.[4] *See Josephson v. Kimco Corp.*, 240

4. In his affidavit in support of TSI's motion for summary judgment, Cobb states that in the case of the November 2002 vacancy, employees would not have been made aware of the vacancy in advance. (document no. 36, Exhibit E). If vacancies were not announced or generally known, then how could one apply for the position?

F.Supp.2d 1000, 1008 (S.D.Iowa 2003) (absence of formal application not dispositive of prima facie case where formal application not prerequisite to consideration of position).

With regard to the manager opening in November 2002, Allen states that Morgan encouraged her to fill out an application, that she did so and gave it to Morgan. Morgan states that she put the application in the file drawer with other applications although she admits that she did not tell Cobb or Bearden that Allen was interested in a manager position. TSI states that Allen did not complete an application in November 2002 and therefore was not an applicant for the managerial position.

This contention is without merit. Even assuming Allen had not filled out an application, by the time of the November 2002 vacancy, Allen had filed both a charge of discrimination and this lawsuit in which she specifically complained about not receiving a promotion when she was more qualified than those who were promoted. Thus, TSI was on notice that Allen wanted to be considered for a management position.

The Court is not persuaded that TSI discriminated against Allen on the basis of race when she was not promoted to the manager position at the McGehee store on December 27, 2001. She had just been involved in an altercation with the Dumas store manager, and had been transferred to McGehee the previous day. Furthermore, she had not, in any way, indicated her desire to be a manager at McGehee.

Somewhat perplexing is why TSI continued to pay Allen the $6.25 hourly salary of an assistant manager once she was transferred to McGehee. The Court is not of the opinion that the reason asserted by TSI, that is, that the salary was to compensate Allen for the extra mileage is the real reason. TSI does not strike the Court as the type of employer who would compensate an employee for the inconvenience of having to travel a greater distance in order to work. The Court is persuaded that the higher salary lends credence to Allen's view that TSI intended to return Allen to the Dumas store, although not necessarily to promote her to manager.

Instead of transferring Allen back to Dumas, however, TSI hired Tamara White as the assistant manager on January 15, 2002. She was clearly less qualified than Allen. Her application does not even indicate whether she graduated high school. She had worked six months as a bookkeeper/sales person at a hardware store. Allen had some post secondary education, and she had previously worked over a year as a cashier at a food store. More importantly, she had relevant experience, having served as assistant manager at the TSI store. In further support of Allen's position that she was supposed to be transferred is the testimony of Morgan that Bearden had stated on several occasions that Allen would be transferred back to Dumas after matters settled down at that store.

Allen had not expressed a desire to be transferred back to Dumas although she believed that she would be. Nevertheless, Allen lived within walking distance of the Dumas store and TSI could have reasonably expected that Allen would have wanted the transfer to Dumas as well as the promotion (at least in terms of position, although no change in pay) to her former position.

The reason asserted by TSI for not transferring Allen back to Dumas cannot withstand scrutiny. Although Cobb overheard the argument, the videotape of the event did not establish that customers were present during the dispute. Furthermore, Morgan had just been promoted to a manager position after having been involved in an argument with her supervisor. Additionally, not to be overlooked, is

Lovell's actions in stealing money from TSI. TSI did not learn of Lovell's misconduct until after she was terminated; nevertheless her misconduct indicates that Lovell was hardly a model employee and that TSI would have been justified in terminating her.

Margie Hill, who is white, was hired as the Dumas store manager to replace Lovell. No evidence has been submitted regarding Hill's qualifications. The Court cannot find that TSI discriminated against Allen in failing to promote her to manager in January, 2002.

In November, 2002, TSI hired an outside applicant, Jeannette Goggans, who is white, to be the McGehee store manager. Goggans heard from Alice Williams about a possible manager position at a store TSI was opening in Dermott. Bearden asked Goggans if she was interested in the manager position at McGehee. She had very little computer skills, and no official supervisory experience outside of supervising her husband and son at a service station. She did have some experience training employees.

It is clear that Goggans did not have the experience that Allen had. Although Goggans had previously managed a family business and had some experience in bookkeeping, she did not have any experience working in a TSI store. Once she was hired, Goggans had to be trained by Bearden and the assistant manager Alice Williams.

As its justification for not promoting Allen, TSI relies on the December 24th incident. TSI also states that Allen was not promoted because of complaints about her behavior. These reasons cannot withstand scrutiny. That Allen at one time was involved in a dispute with her manager could hardly justify TSI permanently excluding Allen from consideration for a manager position, particularly given TSI's consideration of less qualified individuals

for the job and the complete absence of any written criteria for the position. Furthermore, as discussed above, the December 24th incident was not as disruptive as originally thought by Cobb, particularly as no customers were present at the time. Thus, Cobb's concern with the impact Allen's behavior would have on customers was without merit.

Other than vague allegations of complaints about Allen's behavior, there is absolutely no evidence in Allen's personnel file or TSI's written documents to reveal that Allen's behavior was so egregious or improper. Indeed, TSI's willingness to continue to pay Allen $6.25 an hour, more than that paid to other cashiers, is indicative of TSI's opinion that Allen was a valued employee.

It is incredible that Allen, who had been with TSI almost 1 ½ years, was obviously competent, trustworthy and loyal, was not considered for a manager position by November, 2002. Previous managers had been terminated for stealing from TSI. Other managers were hired with virtually no related experience. TSI can offer no legitimate justification as to why Allen was not accorded the same treatment as that afforded whites; that is, why Bearden or Cobb did not offer the McGehee manager's position to Allen.

The Court has considered other evidence in support of its conclusion that TSI's failure to promote Allen for the November 2002 vacancy was discriminatory. Up to that point, TSI had been in business almost 10 years, had about 82 retail outlets, and had never had a black individual as a manager at any of its stores.

TSI claims that it hired the most qualified individuals as store managers. The evidence in the record belies this assertion. There are no job descriptions or performance standards. Applications are not required for positions. Bearden said she

looked at an individual's work history when considering whether to promote from within or hire from without. A number of white individuals who were hired as managers had little or no relevant experience. Some had not submitted written applications. Some lasted only a few weeks, or left under ignominious circumstances.

The Court has also considered the actions of Cobb and Bearden with regard to promotions in other stores they supervised. Dianne Darrough, who is black, had extensive managerial experience. She was hired as an assistant manager at the Star City store in February 2002. The Star City store manager, who was white, was fired for stealing a store deposit in July 2002. Darrough was acting manager for about a month; however, rather than promote Darrough, Bearden and Cobb brought in the manager of the Monticello store, Myrtis Thompson, who is white, to manage *both* the Star City and Monticello stores. As the excuse for doing that rather than promoting Darrough, Bearden testified that she did not feel that Darrough had enough training. However, by the time the manager position became permanent, Darrough had been there several months and had more direct experience than other managers who were hired from without. Furthermore, an additional assistant manager, who is white, was hired at the Star City store to help Thompson. Thompson was the only manager who had to manage two stores and Star City was the only store with two assistant managers. Thompson had told Cobb and Bearden that she did not want to manage the store on several occasions, but Cobb would not accept her resignation.

Darrough ultimately was promoted to manager of the Star City store, however, it was only after she filed a lawsuit alleging discrimination. Of the more than dozen openings for store managers at the stores Bearden supervised, Bearden could not find that any of the black employees qualified to be store manager. There was also testimony by Morgan that Bearden used a racial slur in referring to Allen after she learned of the EEOC complaint.

Theresa Sharkey, who is black, was hired as a cashier at the TSI in Blytheville, Arkansas in January, 2001. She had over six years' experience as a manager of a grocery store. Assistant managers and managers were hired during the ten months Sharkey worked at TSI who had far less experience than Sharkey.

While a different area supervisor was involved in Sharkey's situation, the evidence is probative of discriminatory practices and policies of TSI, especially at the highest levels of management. Larry Cobb was the retail operations manager of TSI He was hired by TSI to open stores and stated that he had opened 82 tobacco stores, and hired eight area supervisors to supervise the various stores. There has never been a black manager of a Tobacco Superstore since Cobb has been retail operations supervisor. Cobb admitted that there was no written materials concerning job performance, job standards or job functions at any stores. David Cohn, the owner of TSI, delegated to Cobb personnel matters and employment decisions. Cobb was charged with hiring the best qualified individuals; according to Cohn race played no factor and he was seemingly unconcerned that there were no black managers in any of his over 80 stores.

Thus, the Court finds that TSI discriminated against Allen on the basis of her race when it failed to promote her to assistant manager of the Dumas store in January, 2002, and failed to promote her to manager of the McGehee store in November, 2002.

■ Allen also contends that she was not promoted in retaliation for engaging

in protected activity.[5] To establish a claim for retaliation, Allen must show that: "(1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection between her protected activity and the adverse employment action." *Bogren v. Minnesota,* 236 F.3d 399, 407 (8th Cir.2000) A plaintiff suffers an adverse employment action when the action results in a "material employment disadvantage such as termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects." *Okruhlik v. Univ. of Arkansas,* 395 F.3d 872, 879 (8th Cir.2005) (citations and internal quotation marks omitted) *See Watson v. O'Neill,* 365 F.3d 609, 613 (8th Cir.2004) (non promotion is adverse action)

 There is no doubt that Allen engaged in a protected activity; she filed an EEOC charge. She also filed this lawsuit prior to the November 2002 vacancy.

The evidence concerning Bearden's knowledge of Allen's EEOC charge is contradictory. She first testified that she was unaware of the EEOC charge filed by Allen, although she admitted to hearing rumors of the lawsuit. She stated she was never told anything definitive about either the EEOC charge or the lawsuit. Morgan stated that a letter from the EEOC had arrived in the mail and she gave it to Bearden. According to Morgan, Bearden told her that Allen had filed an EEOC charge and that Bearden mentioned the EEOC charge on a number of occasions. Morgan claimed that Bearden was angry

and said that she was going to sue Allen for Bearden's mental anguish. Morgan further claimed that Bearden said that she was going to try to get rid of Allen and that she used racial slurs and derogatory terms in referring to Allen.

The evidence from the EEOC reveals that the charge of discrimination and the notice of right to sue were sent to the McGehee store. Thus, there is ample support for Morgan's statement that she gave the EEOC charge to Bearden. The EEOC Charge somehow had to reach TSI management.

Moreover, it is not credible that Bearden would have been unaware of the allegations in the EEOC Charge. Bearden was a high level supervisor and was in regular contact with Cobb; Cobb was in charge of the entire operation. Cobb not only would have received the EEOC charge, but TSI, through Cobb and Bearden, would have had to frame its response to the allegations. Among the allegations was that Allen had complained to Bearden about racial remarks made by Lovell, and that as a result Allen was demoted and transferred.[6]

Additionally, Allen had already filed a lawsuit prior to the November, 2002, vacancy. Bearden and Cobb did not claim ignorance of the existence of a lawsuit.

The Court has previously found that TSI discriminated on the basis of her race for failing to promote her. That is, that the reasons asserted by TSI in failing to promote Allen in November 2002 cannot withstand scrutiny. Here, there is ample evi-

---

**5.** Plaintiff did not submit a retaliation claim with regard to the promotion to the jury; she only submitted a claim that she was terminated in retaliation for filing an EEOC Charge. Nevertheless, the Court will consider the failure to promote retaliation claim as that issue has been raised in the second amended complaint.

**6.** TSI, through counsel, sent a six-page response to the EEOC concerning the Charge. The letter contains facts which could only be provided by Bearden and Cobb. (see Exhibit D to Memorandum in Support of Plaintiff's Motion to Join HEK, Inc. as a Defendant, document no. 68).

dence to also conclude that the failure to promote Allen in November 2002 was retaliatory. The manager vacancy came on the heels of the filing of this lawsuit; there is evidence in the record that Bearden was angry with Allen after learning of the EEOC charge. Rather than consider Allen for the position, Bearden recruited someone from the outside who was far less qualified for the position than Allen.

Thus, the Court finds that TSI retaliated against Allen in failing to promote her in November, 2002, to manager of the McGehee store.

*Termination*

■ Allen contends that TSI discriminated against her on the basis of race and retaliated against her in terminating her in January, 2004. A review of the evidence reveals that Allen walked off the job, did not report back, did not attempt to contact Cobb or otherwise attempt to learn the status of her employment. The Court finds that TSI did not terminate Allen. She walked off the job; therefore, the termination claim is hereby dismissed.

*Defendants' Motion for Reconsideration*

■ Defendants contend that they are prejudiced by having the case tried before a jury rather than the Court and that they are entitled to a new trial. Allen also states that she is entitled to a new trial because the damages found by the jury are inadequate and the Court should not be influenced by the amount.

The Court disagrees that a new trial is warranted. The cases relied upon by defendants are inapposite. In those cases, the parties had consented to a trial by jury, although they were not entitled to jury trial as a matter of right. The court, after the jury rendered a verdict, declared the jury to be advisory. *See Bereda v. Pickering Creek Indus. Park*, 865 F.2d 49, 53 (3rd Cir.1989) (where litigants have consented to nonadvisory jury trial, court

must notify parties of jury's advisory status no later than time when jury selection has begun); *Hildebrand v. Bd. of Trustees of Michigan State Univ.*, 607 F.2d 705, 710 (6th Cir.1979) (district court erred in withdrawing case from jury after both sides requested jury trial and allowing jury to answer certain interrogatories in an advisory capacity only).

Here, neither party requested a jury trial. Counsel for the parties were at least prepared for a trial to the Court when the Court advised them that the case would be tried to a jury. The parties have not indicated how they were prejudiced by the Court how deciding the issues or what they would have done differently had the case been a bench trial. Indeed, it is likely that counsel would have prepared less for a bench trial than for a jury trial.

A new trial would be a waste of judicial resources. The Court has heard the evidence, reviewed the record and has made an independent determination of the issues.

Defendants further argue that they are entitled to judgment as a matter of law as a sanction for Allen's alleged repeated perjury. The Court is not persuaded that Allen failed to disclose or presented false testimony regarding matters material to the lawsuit. Although Allen did not state that she was terminated from her ADC job in her application for a job with TSI, the omission was not material. TSI did not even rely on applications when hiring people. Furthermore, Allen's explanation of her termination from the ADC was not at great odds with the reason she put on the application for TSI.

Allen's conduct hardly rises to the level of an abuse of the judicial process, warranting dismissal of the lawsuit. *See Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 693 (8th Cir.2001).

Thus, the motion for reconsideration is denied.

*Issue of HEK, Inc. vs. TSI*

■ Before the Court deals with damages, the Court must determine who is the proper defendant. Defendants argue that HEK, Inc. (HEK) rather than TSI, is the employer and that it should be liable for any judgment. According to defendants, HEK is a retail operator of Tobacco Superstores. Defendants argue that HEK. is a separate corporate entity, which employs its own store managers. Defendants have presented conflicting information.

The issue of HEK was raised the first time in this action on August 11, 2003, in defendant's response and objection to plaintiff's second motion to compel (document no. 82). Initially, all submissions were in the name of Tobacco Superstores, Inc. (TSI), including the answer, responses to discovery requests, and response to the EEOC. In the April 9, 2003, deposition of Cobb, HEK did not exist, or at least was not mentioned as owning any of the 82 Tobacco Superstores. Cobb referred to the defendant as TSI, and stated that it owns 82 stores. The EEOC charge of discrimination went to the store manager, Tobacco Superstore; the response to the EEOC was by Tobacco Superstore. The notice of right to sue was for Allen to proceed against Tobacco Superstores. TSI, in its response to interrogatories dated May 27, 2003, stated that as of December 27, 2001, TSI owned the stores in Dumas and McGehee along with 65 others. In a response to plaintiff's second set of interrogatories to TSI, dated June 27, 2003, TSI stated that it owned and operated 61 stores on April 9, 2003, and HEK owned 7 stores.

In their filings in which the issue of HEK was first raised, defendants stated that TSI was incorrectly named as defendant; that HEK was the proper defendant. TSI implied that the error was a misnomer, rather than the existence of a different party. The only evidence in the record concerning the corporate existence of HEK is a certificate of good standing issued by the Secretary of State indicating that HEK filed articles of incorporation on November 7, 2000. (Exhibit C, Defendant's Objection to Motion to Join HEK, Inc. as a Party Defendant and Request for Substitution of Parties, document no. 69). There is no independent documentary evidence concerning the stores it does own. The only evidence to support that HEK operates Tobacco Superstores is the testimony of Cohn and Cobb, and letters of counsel. Cobb and Cohn stated that HEK owned the Tobacco Superstores in Dumas and McGehee, although they did not indicate when HEK assumed ownership. Cohn also stated that HEK pays TSI a monthly corporate fee, similar to a franchise fee, in exchange for the right to use Tobacco Superstores' trade name

According to defendants, Bearden was area supervisor of the stores that were under HEK control; but it also appears that she was area supervisor of some stores not part of HEK. Cobb is an employee of TSI, but HEK paid a fee to TSI in return for the amount of time Cobb spends assisting HEK. There is no indication as to the amount of time Cobb spends dealing with HEK matters or the amount of the fee.

At some point in the beginning of 2003, payroll checks at the McGehee and Dumas stores were issued by HEK, rather than TSI. Other than the change in the issuing party, there was no notification to Allen or the other employees at the McGehee or Dumas stores that their employer was HEK as opposed to TSI.

Here the actions taken against Allen were part of an official policy of TSI itself, at the direction of Cobb. Any policies, written or unwritten, are those of TSI and

defendants have not presented any evidence that HEK has different or distinct policies. The employment actions occurred when Cobb was retail operations manager for TSI.

It is, of course, to defendants' advantage to have HEK be the employer; its total assets as of September 30, 2003, were a little more than $825,000.00. TSI had assets as of February 29, 2004, totaling more than $34 million.

The Court cannot find that TSI should not be liable for the judgment. It appears that at some point, after Allen filed an EEOC charge and this lawsuit, HEK came into the picture. The inference flowing from the evidence is that HEK was injected into this litigation in an attempt to limit TSI's liability. Defendants have not shown that the discriminatory actions regarding the two promotions took place when HEK was Allen's employer.

The Court finds that judgment should be imposed against TSI and HEK jointly and severally.

*Damages*

■ Allen is entitled to back pay representing the amount she would have earned as assistant manager of the Dumas store less the amount she earned and as manager of the McGehee store less the amount she earned until she left her employment on January 2, 2004. According to testimony at trial, assistant managers earn $6.25 an hour and work 40 hours; store managers earned between $400 and $450 per week for 50 hours of work. The Court will assume, as Allen was already earning a higher rate of pay as cashier, that she would have received $450.00 per week. Also, TSI did not object to Allen's position that she would have been entitled to $450.00 per week as a manager.

The record reflects that Allen earned $10,880.65 in 2002. As assistant manager from January 15, through November 22, she would have earned $11,000.00 (45 weeks as assistant manager at $6.25/hour at 40 hours per week). She is entitled to an additional $2700.00 representing the five weeks when she should have been promoted to manager in 2002. For the year 2002, Allen is entitled to an additional $2819.35. Allen is entitled to $13,296.86 in back pay for 2003. Thus, Allen is entitled to back pay in the amount of $16,116.26. Allen is entitled to prejudgment interest on this amount.

■ In support of her claim for compensatory damages, Allen states that she was depressed, and was angry about the way she was treated. Furthermore, she had to travel more than 30 miles each day when TSI refused to transfer her back to Dumas. The Court finds that Allen is entitled to compensatory damages in the amount of $7,500.00.

■ Allen requests an award of punitive damages. The Supreme Court in *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999), addressed the standard for an award of punitive damages in employment discrimination case. "Title VII allows for an award of punitive damages if the defendant committed illegal discrimination 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.' 42 U.S.C. § 1981a(b)(1). 'Reckless indifference' means that the defendant had 'knowledge that it may be acting in violation of federal law.' *Kolstad,* 527 U.S. 526, 535, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999)." *Walsh v. Nat'l Computer Sys. Inc.,* 332 F.3d 1150, 1161 (8th Cir.2003). Punitive damage awards have been upheld where an "employer has deliberately turned a deaf ear to discriminatory conduct." *Id.*

The Court is persuaded that an award of punitive damages is warranted in this case. TSI had no employment policies; it never saw the need to discuss equal employment

practices with area supervisors. Not until Dianne Darrough filed a lawsuit was there a black manager. Tobacco Superstores had 82 stores as of 2003–it is incredible that in areas with a substantial black population, such as the Delta in Arkansas, there were no blacks as store managers. More incredible is the failure of TSI to promote clearly highly qualified black individuals, such as Darrough and Allen, who were loyal and trustworthy employees while searching out less qualified white individuals, some of whom subsequently stole from the company.

TSI was certainly on notice of the claims of discrimination. Allen had filed an EEOC charge in March, 2002, Theresa Sharkey had filed a charge in March, 2002, and Diane Darrough had filed a charge in August, 2002. Thus, as of November 2002, when the manager position came open, TSI was on notice that Allen wanted a managerial position and that TSI did not have any black managers. Allen had even filed a race discrimination action. TSI still did not post the job vacancy; still had not written employment policies or job standards. It went outside the company to recruit someone who had not had any experience with the company, while it had well qualified black employees with managerial experience.

Additionally, the EEOC had issued a determination in Sharkey's case, in September, 2003, *before* Darrough's promotion, finding that Sharkey had been discriminated against in the terms and conditions of her employment and was denied promotions because of her race. The EEOC also found evidence that TSI "consistently discriminated against Blacks as a class by denying them promotions to assistant manager and manager positions." (Ex. L, to Plaintiff's Response to Motion for Summary Judgment, document no. 55).

TSI has "deliberately turned a deaf ear to discriminatory conduct." The Court finds that Allen is entitled to an award of punitive damages in the amount of $75,000.00 against TSI and HEK, jointly and severally.

In sum, the Court finds that TSI discriminated against Allen on the basis of race in not promoting her to assistant manager in January, 2002 and to manager in November 2002; and retaliated against her in not promoting her to manager in November, 2002. Allen is entitled to back pay in the amount of $16,116.21. She is entitled to prejudgment interest on this amount from January 15, 2002 until she left defendants' employ on January 2, 2004. She is entitled to compensatory damages in the amount of $7,500.00 and punitive damages in the amount of $75,000.00, as well as attorneys' fees and costs.[7]

Judgment will be entered against TSI and HEK, jointly and severally.

Defendants' motion for reconsideration is denied.

*JUDGMENT*

Pursuant to the Memorandum Opinion and Order entered this date, judgment is entered in favor of plaintiff and against defendants, jointly and severally, in the amount of $98,616.21, prejudgment interest as set forth in the Order, attorneys' fees and costs.

---

7. Plaintiff's counsel previously filed motions for attorneys' fees and costs. These motions were denied as moot in light of the Court's Order vacating the jury verdicts.