# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-3807/04-3990

———————

| | | |
|---|---|---|
| Desi A. Ledbetter, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| Alltel Corporate Services, Inc., | * | |
| | * | |
| Appellant/Cross-Appellee. | * | |
| | * | |

———————

Submitted: November 16, 2005
Filed: February 7, 2006

———————

Before SMITH, HEANEY, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

Desi A. Ledbetter, an African-American, sued his employer, Alltel Corporate Services, Inc. (ACS), for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. After a bench trial, the district court[1] found for Ledbetter, awarding backpay and compensatory damages. ACS appeals, arguing that the district court erred in finding intentional race discrimination, admitting statistical evidence,

———————

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

calculating backpay, and awarding compensatory damages. Ledbetter cross-appeals, challenging the calculation of backpay. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

## I.

ACS provides corporate services to its parent, ALLTEL Corporation, and to other subsidiaries. Within ACS, the Administrative Services department delivers services such as real estate, corporate travel, mail services, and document services. Steven A. Kavanaugh, the Vice President of Administrative Services, makes employment decisions regarding the personnel in Administrative Services. Document Services – the department at issue in this appeal – is the sub-component of Administrative Services that provides document copying, distribution, and printing services for ALLTEL and its subsidiaries.

In July 1999, Kavanaugh and the Director of Office Services hired Desi Ledbetter as the Customer Service Supervisor within Document Services. Ledbetter reported to the director and was responsible for overseeing and managing the copiers, incoming copy and print jobs, outsourced print jobs, and pre-press production. He also maintained the Customer Services budget and supervised four employees. Ledbetter consistently received positive performance evaluations from the director, as well as yearly merit increases in salary.

In February 2001, ALLTEL reorganized due to instability in the telecommunications market, eliminating over 900 jobs, including several at ACS. The Director of Office Services position was eliminated, with its responsibilities distributed within Administrative Services. On February 15, Kavanaugh named Ledbetter "acting" manager of Document Services, where he assumed the director's duties of supervising the Production Services employees and managing the Document Services budget. He retained his previous duties as Customer Service Supervisor.

In March 2001, Ledbetter asked Kavanaugh for additional compensation in his new position. Kavanaugh replied that he was "acting" manager until further notice, and that no reclassification would be authorized until a decision was made about the future status of the Document Services department. Kavanaugh, concerned about the declining production volume in Document Services, told Ledbetter that upper management was discussing the possibility of outsourcing the department.

Ledbetter did not make further inquiry until August 30, 2001, when he asked Kavanaugh if his position could be evaluated for reclassification and a pay raise. Kavanaugh responded that he would consider reclassification at the beginning of the next year. After hearing no response by the beginning of 2002, Ledbetter e-mailed Kavanaugh about the reclassification. In February 2002, Kavanaugh agreed to submit Ledbetter's "acting" manager position to the Corporate Compensation department for evaluation.[2]

To begin the evaluation process, on February 20, 2002, Kavanaugh gave Ledbetter approval to fill out a job evaluation form for his position. Ledbetter completed it on February 22 and returned it to Kavanaugh. After receiving no response for almost a month, Ledbetter asked Kavanaugh if he had received it. On March 13, Kavanaugh said he had not found time to review it. Anxious to remove the term "acting" from his title, on April 15, Ledbetter decided to involve Human Resources in the reclassification process. After a series of e-mails between Ledbetter,

---

[2]Corporate Compensation evaluates each position within ALLTEL to determine the proper pay grade and salary (percentile) for the employee in the position. Positions may be evaluated and/or reclassified by Corporate Compensation at the request of an employee's manager when market conditions change or the scope and responsibility of the employee's position increase. Specifically, ALLTEL's Compensation Management Guide specifies that reclassifications usually occur due to reorganizations, changes in market factors, or changes in technology. ALLTEL designed the Guide to inform managers when reclassification requests should be submitted.

Kavanaugh, and Human Resources in late spring, Kavanaugh forwarded the form to Corporate Compensation on June 14. On July 29, Ledbetter again asked Human Resources the status of his reclassification. He did not receive a response until August 13, when he learned that Kavanaugh was still discussing the issue with Corporate Compensation.

On October 15, Kavanaugh informed Ledbetter that Corporate Compensation had authorized a reclassification of his position from pay grade 13 to 15. When the reclassification took effect on January 1, 2003, Kavanaugh recommended that Ledbetter's salary be calculated at the 25th percentile of grade 15, or $50,050 – an 18.6% increase over his previous salary. Ledbetter responded that he believed pay grade 16 was more appropriate, because it was the grade at which most management positions were classified. He also requested that Kavanaugh authorize retroactive pay to February 2001, when he became "acting" manager. Kavanaugh denied both requests, prompting Ledbetter again to take his concerns to Human Resources. After reviewing Ledbetter's reclassification process, members of Human Resources and Corporate Compensation determined that Ledbetter received a fair evaluation, was properly classified at pay grade 15, and should not receive retroactive pay.

Ledbetter sued ACS, claiming he was paid less than other Caucasian managers and forced to assume the title of "acting" manager for 22 months while attempting to get reclassified. After a bench trial, the district court held that ACS intentionally discriminated against Ledbetter by failing to reclassify his position at the time of the reorganization in February 2001, paying him less than other Caucasian managers between February 2001 and January 2003, and giving him the "acting" title for 22 months. As to damages, the district court determined that Ledbetter's pay grade was properly grade 15, but ordered that it be retroactive to when he became "acting" manager. The court awarded Ledbetter $14,421.91 in backpay, $22,000 in compensatory damages for emotional distress, and costs and attorney's fees. Both parties appeal.

II.

On appeal, ACS argues that the district court's finding of intentional discrimination is not factually supported by the record. This court reviews the district court's ultimate finding of discrimination for clear error, giving due regard to the opportunity of the district court to judge the credibility of the witnesses. **Fed. R. Civ. P. 52(a)**; *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (presence of discrimination is a finding of fact that cannot be set aside unless clearly erroneous). A finding of discrimination will be overturned only if not supported by substantial evidence, based on an erroneous construction of the law, or it is clear that the district court has committed a mistake. *Day v. Johnson*, 119 F.3d 650, 654 (8th Cir. 1997). This court need only decide whether the record as a whole supports the ultimate finding of discrimination. *Tadlock v. Powell*, 291 F.3d 541, 546 (8th Cir. 2002) (the *McDonnell Douglas* presumptions disappear upon review of a district court's determination that discrimination has occurred).

The district court properly applied the *McDonnell-Douglas* burden-shifting analysis to determine whether ACS engaged in intentional race discrimination in its decisions about Ledbetter. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972); *Kincade v. City of Omaha*, 378 F.3d 799, 806 (8th Cir. 2004). The district court found that Ledbetter had established a prima facie case of intentional race discrimination, because he is an African-American who, while consistently receiving positive performance reviews, was denied reclassification and a raise for 22 months, while Caucasian managers did not face similar obstacles. *See generally Davis v. KARK-TV, Inc.*, 421 F.3d 699, 704 (8th Cir. 2005). Although ACS articulated non-discriminatory reasons for delaying the reclassification, such as uncertainty about the future of the Document Services department and the need to cut costs following the reorganization, the district court found these reasons unpersuasive. Specifically, it found that other similarly-situated Caucasian employees at ACS were treated more favorably in the ALLTEL reorganization, and that ACS failed to follow its own

reclassification procedures in keeping Ledbetter at grade 13 for nearly two years after he had assumed managerial duties.

On appeal, ACS asserts the same arguments as raised to the district court in order to justify its refusal to reclassify Ledbetter's position until January 2003. First, ACS relies on Kavanaugh's testimony that he did not seek additional compensation for Ledbetter in March 2001, because the future of the Document Services department was uncertain at that time. The district court rejected this argument, finding that ALLTEL's Compensation Management Guide required a different result. *See Floyd v. State of Mo. Dep't of Soc. Servs.*, 188 F.3d 932, 937 (8th Cir. 1999) ("An employer's failure to follow its own policies may support an inference of pretext"). The Guide specifies that reclassifications usually occur during reorganizations or when an employee assumes additional job responsibilities. While members of Human Resources and Corporate Compensation testified that the Guide was advisory, the district court believed that this rationale left too much discretion to individual managers like Kavanaugh, who quickly approved reclassifications for other employees.

The district court also found no evidence in the record or in the Guide to support possible outsourcing as a reason to pay employees at too low a grade. ACS disputes this finding as an impermissible attack on its business judgment. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995). While a district court may not second-guess an employer's valid, non-discriminatory employment decisions, the court still must analyze whether the proffered reasons are a pretext for intentional discrimination. *See Moschetti v. Chicago, Central & Pac. Railroad Co.*, 119 F.3d 707, 710 (8th Cir. 1997). Here, the district court properly concluded that the outsourcing argument was pretextual. As the record supports this conclusion, this court will not disturb it on review.

Next, ACS argues that cost-cutting measures necessitated by the reorganization delayed Ledbetter's reclassification. Specifically, ACS contends that a number of employees assumed additional duties without increased compensation after the reorganization. The district court disagreed based on the language of the Compensation Management Guide and Kavanaugh's treatment of other employees in his department around the time of the reorganization.

During the reorganization, Kavanaugh quickly initiated a reclassification and pay raise for Jody Little, Manager of Contracts, who became Staff Manager of Travel after the reorganization. In fact, her reclassification was submitted without her knowledge and she received a pay raise approximately 11 days after Kavanaugh forwarded the paperwork to Corporate Compensation. This contrasts with the 22 months it took Ledbetter to get reclassified. Although ACS tries to distinguish this decision by arguing that Little was "promoted" rather than reclassified, both Ledbetter and Little assumed additional responsibilities in a different department while retaining their previous duties. Similarly, both employees had new departmental titles for their positions, unlike other employees that ACS identifies as "similarly situated." While ACS argues that Ledbetter did not assume as many additional duties as Little, the district court found that this did not justify the refusal to reclassify Ledbetter's position. As Kavanaugh made the decisions regarding both Ledbetter and Little, the district court was uniquely positioned to determine whether ACS's stated reason for the different treatment was pretextual. *See Jackson v. City of St. Louis*, 220 F.3d 894, 896-97 (8th Cir. 2000) (analyzing whether employees are sufficiently similarly-situated is easier where the employees have the same supervisor); *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000) (same).

Ledbetter also identified Melissa J. Van Dell, whose position was reclassified in July 2000 from Manager, to Staff Manager, of Furniture and Interiors. Again, Kavanaugh was the supervisor responsible to submit the paperwork to Corporate Compensation, who approved the reclassification and salary increase in less than a

week. ACS argues that Van Dell is not similarly-situated to Ledbetter, because her reclassification occurred before the reorganization. The district court believed, however, that ALLTEL began expressing concern about the failing telecommunications market around the time that Van Dell was reclassified. While the test is rigorous for determining whether an employee is similarly-situated, the district court did not clearly err in finding Little and Van Dell similarly-situated to Ledbetter for purposes of determining whether Ledbetter was discriminated against. *See Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994) (employees must be similarly-situated in all relevant respects for proper comparison).

ACS next argues that Ledbetter did not have enough management experience when the reorganization occurred in order to justify a reclassification or increasing his compensation. Importantly, when Ledbetter asked Kavanaugh about reclassification in August 2001, he was told that he needed a few more months of management experience before meriting a pay raise or reclassification. The district court rejected the "inexperience" argument, finding that Kavanaugh gave him the additional duties of a manager without increasing his compensation commensurately. In fact, Kavanaugh gave Ledbetter a positive performance evaluation as manager in February 2002, almost a full year before his reclassification finally took effect. The district court was particularly troubled that no other manager reporting to Kavanaugh was an "acting" manager for any length of time, much less 22 months. The district court did not clearly err in finding pretextual the "inexperience" rationale.

Finally, ACS argues that giving Ledbetter the title of "acting" manager is not an adverse employment action. An "adverse employment action" is a "material employment disadvantage, such as a change in salary, benefits or responsibilities." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). It includes decisions such as failing to promote, or reassigning an employee to a position with significantly different responsibilities. *Forshee v. Waterloo Indus., Inc.*, 178 F.3d 527, 530 (8th Cir. 1999). While ACS argues that Ledbetter suffered no material disadvantage as

-8-

"acting" manager, the district court found that he undertook new responsibilities without additional pay, which constituted an adverse employment action. Moreover, the district court credited Ledbetter's testimony that he readily assumed the management position, did a good job, and was continually embarrassed by the delay in reclassification and a salary increase. As the district court is in the best position to make such credibility determinations, and the record supports the finding that Ledbetter assumed additional responsibilities without receiving a raise, the district court's findings are not clearly erroneous.

## III.

ACS also appeals the district court's admission into evidence of a list of ACS employees proffered by Ledbetter that identified each employee's position and race. ACS argues this list is indefinite and incomplete, and therefore, not probative on intentional race discrimination. This evidentiary challenge is reviewed for abuse of discretion. *McPheeters v. Black & Veatch Corp.*, 427 F.3d 1095, 1100-01 (8th Cir. 2005).

Although the parties debate whether the employee list should have been admitted, the district court did not rely on it in finding intentional race discrimination. While the district court stated that the under-representation of African-Americans in the management list was "eye-catching," the court specified that it was not persuaded or convinced by the numbers in the list. Rather, the district court focused on the testimony relevant to the employment decisions about Ledbetter. Accordingly, this court finds no abuse of discretion in admitting the evidence.

IV.

Both ACS and Ledbetter appeal the district court's calculation of backpay. As this calculation involves factual determinations, this court reviews for clear error. *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1062 (8th Cir. 2002).

The district court determined that Ledbetter was entitled to backpay in the amount of $14,421.91 – the difference *between* the amount that Ledbetter would have earned if his position were reclassified to grade 15 at a penetration range[3] of 26% at the time of the reorganization, *and* the amount actually earned at grade 13. On appeal, the parties agree that the district court correctly determined that Ledbetter should be at pay grade 15, but dispute the 26% penetration range.

The district court based its calculations on exhibits and testimony offered by ACS that explained the penetration ranges. The 26% penetration range falls within the second quartile of pay grade 15, representing a finding that Ledbetter was "fully qualified" for the manager position. As Ledbetter received outstanding merit increases in both his supervisor and manager positions, the district court found he was performing as a "fully qualified candidate," mandating a minimum penetration range of 26%.

ACS argues that Ledbetter should be placed in a 14% penetration range within grade 15, to reflect more accurately the salary increases of other employees receiving raises during and after the reorganization. ACS also argues that Ledbetter is not "fully qualified" for the management position, as he only received merit increases as a supervisor. These arguments are unavailing in light of Kavanaugh's initial

---

[3] The "penetration range" is the position of a salary within the pay range in relation to the minimum and maximum of that range. Each pay grade has four "quartiles," each of which requires an individualized determination as to where an employee falls on the range, depending on experience.

recommendation that Ledbetter be placed in a penetration range of 25% when his reclassification took effect in January 2003. Moreover, as the district court correctly found, Kavanaugh did authorize a merit increase for Ledbetter in February 2002 and February 2003.

Ledbetter argues that he deserves a 31% penetration range to account for the merit increases he received between 2001 and 2004. He argues that he will lose the benefit of these increases if the range is set at 26%. As the district court found, however, merit pay is distinct from salary and should not affect the employee's range following reclassification. Given the specific findings in the record, the district court did not commit clear error in calculating the backpay award.

V.

Finally, ACS appeals the district court's $22,000 award of compensatory damages, arguing it is not supported by competent proof of a genuine injury. *See Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978). This court reviews the district court's compensatory damage award for clear error, giving due regard to credibility determinations of the district court. *See Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349, 358 (8th Cir. 1997); *see also Hall v. Gus Construction Co.*, 842 F.2d 1010, 1017 (8th Cir. 1988) ("In a bench trial, ascertaining the plaintiff's damages is a form of fact-finding that can be set aside only if clearly erroneous").

ACS emphasizes that the only evidence supporting Ledbetter's request is his testimony. However, a plaintiff's own testimony, coupled with the circumstances of the case, can sustain the burden of establishing emotional suffering. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1065 (8th Cir. 1997). Medical or expert testimony is not required to establish mental anguish. *See id.* While ACS argues that Ledbetter offered no evidence of severe emotional distress that warrants compensatory damages, Ledbetter testified that he felt humiliated and demoralized in having to tell his friends

-11-

and family members that he was denied a pay raise after promotion to the position of "acting" manager. The district court specifically stated that it was "moved by the Plaintiff's compelling testimony that demonstrated his pain and agony as a result of his treatment and in the manner in which his title of 'acting' diminished his confidence and credibility." The court was also persuaded by Ledbetter's vigorous efforts to correct the situation, finding "it does not take an MBA to know that, at least in most instances, a title of 'acting' reflects an uncertainty of managerial confidence, particularly when coupled with no raise in pay." The district court's precise factual findings and credibility determinations are not clearly erroneous, and thus, the award of compensatory damages is upheld.

## VI.

The judgment of the district court is affirmed.

_____