# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-3414/3884

_____

Pamela Allen,                                    *
                                                 *
                    Appellee,                    *
                                                 *    Appeals from the United States
        v.                                       *    District Court for the
                                                 *    Eastern District of Arkansas.
Tobacco Superstore, Inc.; HEK, Inc.,             *
                                                 *
                    Appellants.                  *

_____

Submitted: April 11, 2006
    Filed: February 2, 2007

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Pamela Allen (Allen), a black African American, brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-2000e-16, and 42 U.S.C. § 1981, alleging Tobacco Superstore, Inc., and HEK, Inc. (collectively, TSI), failed to promote her based on race and in retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The district court found in Allen's favor and awarded Allen back pay, compensatory damages, punitive damages, attorney fees, and costs. TSI appeals. We affirm in part, reverse in part, and remand for further proceedings.

# I.    BACKGROUND

TSI operates a chain of eighty-two retail tobacco stores in Arkansas, Tennessee, Mississippi, and Missouri. In May 2001, TSI opened a new store in Dumas, Arkansas. On May 19, 2001, TSI area supervisor Jo Bearden (Bearden),[1] a Caucasian, hired Allen as a clerk at the Dumas store, at the pay rate of $5.25 per hour. In June 2001, Bearden hired Phyllis Lovell (Lovell), a Caucasian, as the Dumas store manager. On July 23, 2001, Bearden promoted Allen to assistant manager and raised Allen's pay to $6.25 per hour.

On December 24, 2001, TSI's retail operations manager, Larry Cobb (Cobb), a Caucasian, returned a telephone call to Lovell at the Dumas store. During the phone call, Allen entered the store office and overheard Lovell complaining to Cobb about Allen. Lovell and Allen argued as they took turns talking with Cobb. According to Cobb, both Lovell and Allen were speaking very loudly and Cobb expressed concern customers in the store might hear the argument. Cobb received Lovell's assurance she and Allen could finish the work day without another argument.

Cobb was upset by the lack of leadership shown by Lovell and Allen, and decided to terminate both women. On December 26, pursuant to Cobb's instruction, Bearden fired Lovell because of the December 24 incident. However, with Cobb's approval, Bearden allowed Allen to transfer to the McGehee, Arkansas, store as a cashier and to retain her $6.25 rate of pay. Bearden hired Margie Hill (Hill), a Caucasian, as the Dumas store manager, and on January 15, 2002, hired Tamara L. White (White), also a Caucasian, to replace Allen as assistant manager. Neither Hill nor White had previous experience with TSI.

---

[1]Bearden supervised ten stores in southeast Arkansas, including stores in Dumas and McGehee, Arkansas. Bearden was responsible for staffing approximately fifty employees at the ten stores.

On December 27, 2001, McGehee store manager, Becky Smith (Smith), a Caucasian, confronted cashier, Kelly Morgan (Morgan), a Caucasian. In the presence of customers, Smith began chastising Morgan about coming into work too early. The argument continued for about ten minutes. Morgan told Alice Williams (Williams), an assistant manager at the McGehee store, about the incident and Williams suggested Morgan speak to Bearden. Williams and Morgan then left the McGehee store and went to the Dumas store to talk to Bearden. When Bearden called and questioned Smith about the incident, Smith became belligerent and quit. On January 27, 2002, Bearden instructed Williams to train Morgan for the McGehee store manager position.

In March 2002, Allen filed a charge with the EEOC alleging (1) TSI discriminated against Allen because of her race when TSI hired less-qualified Caucasian females as manager and assistant manager of the Dumas store in January, and (2) TSI retaliated against Allen because she complained to Bearden about racial remarks made by Lovell.

The EEOC concluded no violation occurred, but issued Allen a right-to-sue letter on July 31, 2002. Allen filed the instant suit on October 15, 2002, alleging TSI discriminated against Allen because of her race asserting (1) TSI transferred Allen to the McGehee store to prevent Allen from becoming the Dumas store manager, (2) TSI refused to promote Allen to management vacancies at the Dumas store, and (3) Allen was subjected to a hostile work environment at both the Dumas and McGehee stores.

After filing suit, Allen continued to work as a cashier at the McGehee store. Morgan remained store manager until Morgan's termination on November 22, 2002. After terminating Morgan, Bearden hired a non-TSI employee, Jeannette Goggans (Goggans), a Caucasian, as the new McGehee store manager. On January 29, 2003, Allen amended her complaint, adding the allegation TSI refused to promote Allen to the McGehee store manager position in November 2002 because of her race and in retaliation for filing an EEOC charge. Allen further alleged TSI reduced her work

hours in December 2002 because of her race, and in retaliation for filing the EEOC charge.

Allen continued to work at the McGehee store after Goggans became store manager. On January 2, 2004, when Allen arrived at work, she noticed Goggans assigned Allen all late shifts for the following week. Allen became upset because she requested earlier shifts. Allen confronted Goggans and asked whether Goggans had seen Allen's note regarding the work schedule. Goggans told Allen she had not. Allen became agitated and Goggans told Allen if she could not calm down, she should get her belongings and go home. Allen asked Goggans whether she was being fired, and Goggans said, "no." Approximately one hour and twenty minutes later, Allen asked Goggans whether Goggans meant what she said when she told Allen to leave. Goggans responded, "yes." Allen walked out of the store and did not return. Allen subsequently obtained employment with another company.

TSI moved for summary judgment on all claims. The district court granted TSI's motion as to Allen's hostile work environment claim, but denied the motion as to Allen's race discrimination and retaliation claims. On August 20, 2004, three days before Allen's case was set to go to trial, the district court sua sponte set the case for trial to a jury. Following a seven-day trial, the jury found in favor of Allen on her failure to promote claims, but found in favor of TSI on Allen's retaliation and termination claims. The jury awarded Allen $23,100.00 in compensatory damages and $100,000.00 in punitive damages.

On January 6, 2005, the district court vacated the jury verdict, concluding it erred in sua sponte ordering a jury trial. Nevertheless, the district court reasoned it had the authority to call an advisory jury pursuant to Federal Rule of Civil Procedure 39, and thus would treat the jury verdict as advisory. Thereafter, on June 16, 2005, the district court issued an order making its own findings of fact and conclusions of law. See Allen v. Tobacco Superstore, Inc., 375 F. Supp. 2d 796 (E.D. Ark. 2005).

The district court determined (1) TSI had not discriminated against Allen by failing to promote her to a management position in December 2001; (2) TSI discriminated against Allen by failing to promote her to the Dumas assistant manager position in January 2002; (3) TSI discriminated and retaliated against Allen by failing to promote Allen to McGehee store manager in November 2002; and (4) TSI did not terminate Allen, but rather Allen walked off the job. Id. at 802, 804, 806.

The district court denied TSI's motion for a new trial, reasoning TSI was not prejudiced by having to present its case to a jury rather than to the bench. The district court also denied TSI's motion for judgment as a matter of law as a sanction for what TSI contended was Allen's repeated perjury. The district court found Allen's omissions and alleged perjury were not material and did not rise to the level of an abuse of the judicial process warranting a dismissal of the lawsuit. Id. at 806. Accordingly, the district court awarded Allen $16,116.26 in back pay plus prejudgment interest, $7,500.00 in compensatory damages, and $75,000.00 in punitive damages. Id. at 808-09. The district court also awarded Allen $74,905.00 in attorney fees and $4,122.28 in costs. This appeal followed.

## II.    DISCUSSION

TSI argues the district court (1) abused its discretion by not imposing severe sanctions on Allen for committing perjury; (2) erred in its findings of fact and conclusions of law by rejecting as pretextual TSI's stated reasons for not promoting Allen to a management position; (3) erred in numerous evidentiary rulings and in relying on theories abandoned by Allen; (4) compounded its initial error of improperly ordering a jury trial by using the jury's verdict as advisory and issuing its own findings of fact and conclusions of law rather than ordering a new bench trial; (5) erred in awarding excessive compensatory and punitive damages; and (6) erred in failing to reduce Allen's attorney fee award based on her limited success.

-5-

### A. Sanctions

TSI contends the district court abused its discretion by not striking Allen's pleadings, dismissing her claims, or otherwise addressing Allen's egregious conduct, which included (1) testifying falsely under oath at her unemployment hearing, deposition, and trial; (2) making false statements in sworn documents, including her EEOC charge, responses to discovery requests, and written responses to the unemployment commission; (3) submitting a fabricated document as an exhibit; and (4) inducing others to engage in perjury on her behalf. TSI alleges Allen admitted lying after being confronted at trial with store surveillance videotapes, which contradicted her pleadings, testimony, and statements.

We review for an abuse of discretion the district court's decision regarding the imposition of sanctions pursuant to its inherent powers or Federal Rule of Civil Procedure 37. See Martin v. DaimlerChrysler Corp., 251 F.3d 691, 694 (8th Cir. 2001). Our deferential standard of review applies to the district court's "decision to impose a sanction, the nature of the sanction imposed, and the factual basis for the court's decision." Chrysler Corp. v. Carey, 186 F.3d 1016, 1019 (8th Cir. 1999) (citation omitted). The sanction of dismissal of a case is "drastic" and subject to a more focused review. Id. at 1020. Dismissal should be used only in exceptional cases because in our justice system, "the opportunity to be heard is a litigant's most precious right and should be sparingly denied." Id. (internal quotation omitted). In addition, "there is a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court." Id.

In denying TSI's motion for judgment as a matter of law as a sanction, the district court concluded Allen did not present false testimony or withhold evidence *material* to the lawsuit, and Allen's conduct did not rise to the level of an abuse of the judicial process. We agree.

First, the substance of TSI's claim that Allen gave false testimony is based upon two events: the Lovell-Allen argument on December 24, 2001, and Allen's final day at TSI on January 2, 2004. In pleadings, depositions, and at trial, Allen gave her account of the events as she recalled them. At trial, TSI presented surveillance videotapes showing a different version of the events. TSI argues the district court failed to acknowledge those discrepancies and Allen's attempt to bolster her case. We disagree. TSI presented the videotapes to impeach Allen's testimony as to the events on December 24, 2001, and January 2, 2004. Apparently, TSI was successful, because TSI prevailed over Allen's claims of discriminatory failure to promote in December 2001 and wrongful termination in January 2004. Although impeachment may be clear and beneficial, the degree of benefit is properly for the trier of fact. Furthermore, like the district court, we do not find the discrepancies between Allen's testimony and the events as depicted on the surveillance videotapes to be so egregious as justify dismissing Allen's claims.

Second, regarding TSI's allegation Allen falsified applications, TSI essentially challenges the district court's credibility findings. We previously have declared credibility determinations are "within the discretion of the district court and virtually unassailable on appeal." United States v. Denton, 434 F.3d 1104, 1114 (8th Cir. 2006) (internal quotation omitted). Furthermore, as the district court noted, the contested applications were not necessarily material to Allen's claims because "TSI did not rely on applications or requests by employees for promotion. Vacancies were not announced or posted but were filled quite often by word of mouth." Allen, 375 F. Supp. 2d at 801, 806.

The district court did not abuse its discretion in denying TSI's motion for judgment as a matter of law as a sanction.

**B.     District Court's Findings of Fact and Conclusions of Law**

TSI next argues it is entitled to judgment as a matter of law based upon the district court's erroneous factual findings and legal conclusions. "We review the district court's findings of fact for clear error and its conclusions of law *de novo*." Pachl v. Seagren, 453 F.3d 1064, 1068 (8th Cir. 2006).

**1.     Failure to Promote on January 15, 2002**

TSI alleges the district court's determination TSI discriminated against Allen by failing to promote her to assistant manager in January 2002 is inconsistent with the district court's determination TSI did not discriminate against Allen on December 27, 2001, by failing to promote her to the McGehee store manager position. TSI contends, given the serious nature of the Lovell-Allen argument on December 24, 2001, it is unreasonable to believe Allen would have been considered for a promotion to the assistant manager position at the Dumas store only three weeks later.

To establish a prima facie case of racial discrimination in a failure-to-promote claim, a plaintiff must show "(1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." Shannon v. Ford Motor Co., 72 F.3d 678, 682 (8th Cir. 1996). Failure to formally apply for a management position does not bar a plaintiff from establishing a prima facie claim, as long as the plaintiff "made every reasonable attempt to convey [her] interest in the job to the employer." Chambers v. Wynne Sch. Dist., 909 F.2d 1214, 1217 (8th Cir. 1990) (quotation omitted). If a prima facie case is established, "the burden of production shifts to the employer, who must rebut the presumption of discrimination with evidence 'that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" Shannon, 72 F.3d at 682 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)). A plaintiff may nonetheless prevail by presenting credible evidence the employer's stated reasons are pretextual. Id.

Allen met her burden of showing a prima facie case of discrimination. First, Allen is a member of a protected class. Second, Allen previously held the position of assistant store manager at the Dumas store. TSI apparently considered Allen qualified for the assistant manager position since TSI continued to pay Allen at the assistant manager rate of pay after TSI transferred Allen to the McGehee store as a cashier. Allen's lack of an application for promotion does not defeat Allen's failure to promote claim, because TSI did not require or even rely on applications. Third, Allen was passed over for the position. Finally, the position went to Tamara White, a Caucasian female. The crucial issue, then, is whether the legitimate, non-discriminatory reason given by TSI for not promoting Allen was pretextual.

TSI relies on the seriousness of the December 24 Lovell-Allen argument as its non-discriminatory basis for failing to promote Allen to the Dumas assistant manager position on January 15, 2002. Allen contends this reason is pretextual since Morgan's participation in a similar argument with her store manager did not prevent Morgan from being promoted to the McGehee store manager position.

Like the district court, we find no substantial adverse differences between the Lovell-Allen argument and the Morgan-Smith argument. Allen testified her argument with Lovell occurred inside the Dumas store office and out of the presence of customers. The surveillance videotape offered into evidence by TSI was recorded after the Dumas store closed for the day on December 24, 2001, and therefore could not corroborate Cobb's speculation that "[he] knew in [his] mind . . . customers could hear those people yelling and screaming." In contrast, it is undisputed the Morgan-Smith argument occurred in the front of the McGehee store in the presence of customers. TSI's assertion Morgan responded more professionally than Allen is unavailing. First, it was inconsistent for TSI to continue paying Allen at the assistant manager pay rate of $6.25 per hour after transferring Allen to the McGehee store as a cashier if TSI deemed Allen's conduct to be so exceptionally unprofessional. Second, Lovell's termination suggests TSI deemed Lovell's conduct, not Allen's, to

be improper.[2]  Both the Morgan-Smith and the Lovell-Allen arguments resulted in the store managers, Smith and Lovell, either quitting or being fired.  Conversely, in both cases, the subordinate employees, Morgan and Allen, were not fired.  On these facts, it is a reasonable inference TSI deemed both arguments of similar caliber.

The district court reasonably rejected as pretextual TSI's proffered basis for failing to promote Allen to assistant manager in January 2002, and found TSI committed racial discrimination.

### 2.    Failure to Promote and Retaliation in November 2002

TSI argues the district court's finding TSI discriminated and retaliated against Allen in November 2002 by not promoting Allen to McGehee store manager is inconsistent with the uncontroverted evidence.  According to TSI, after the December 24, 2001 argument, Allen continued to exhibit behavior problems, and TSI argues those problems, coupled with Allen's past conduct, constituted legitimate justification for not promoting Allen to store manager in November 2002.

Allen easily satisfied the elements of a prime facie case of racial discrimination for failure to promote in November 2002.  The record shows, after Morgan was fired in November 2002, TSI hired Goggans, a Caucasian female, not previously employed by TSI, for the McGehee store manager position.  Goggans lacked Allen's experience, had very few computer skills, and had no recognized supervisory experience. Without a doubt, TSI knew of Allen's interest in a management position, because in March 2002 Allen filed a complaint with the EEOC charging TSI with race discrimination for failing to promote her to assistant manager in January 2002.

---

[2]Indeed, TSI later discovered Lovell stole the Dumas store's bank deposit on December 24, 2001.

The record contains additional evidence of racial discrimination. When Allen filed her lawsuit, TSI had been in business for approximately ten years and operated eighty-two retail stores in states with large black populations–Arkansas, Tennessee, Mississippi, and Missouri–yet none of TSI's stores had a black store manager. In 2001 and 2002, TSI did not have a procedure for advancement. If an employee wanted to be considered for a management position, the employee simply asked the store manager or supervisor. Lovell, Hill, and Goggans were hired after Allen and had less managerial experience than Allen. Nonetheless, Lovell, Hill, and Goggans were hired directly into store manager positions. These hiring practices, together with TSI's word-of-mouth promotion process, support a finding of discriminatory practice. See Lyoch v. Anheuser-Busch Co., 139 F.3d 612, 615 (8th Cir. 1998) (concluding the employee should not bear the same burden of proving a prima facie case of discrimination when the employer's promotion criteria are "subjective and the process 'vague and secretive'" as when the case involves objective criteria which apply to all applicants).

Allen also satisfied the elements of a prima facie case of retaliation by engaging in a statutorily protected activity, suffering an adverse employment action, and demonstrating a causal connection between the adverse employment action and the protected activity. See Peterson v. Scott County, 406 F.3d 515, 524 (8th Cir. 2005). In March 2002, Allen filed an EEOC complaint. Allen suffered an adverse employment action when TSI denied Allen the McGehee store manager position in November 2002. Finally, Allen demonstrated a causal connection between the protected activity and the adverse employment action, because, as the district court reasoned, the manager vacancy "came on the heels" of Allen's filing a lawsuit against TSI, and "[r]ather than consider Allen for the position, Bearden recruited someone from the outside who was far less qualified for the position than Allen." Allen, 375 F. Supp. 2d at 806.

Having determined Allen made a prima facie showing TSI discriminated and retaliated against her in November 2002, the question is whether TSI's legitimate, non-discriminatory reason for not promoting Allen was pretextual. The district court found TSI's justification for not promoting Allen—her altercation with her store manager on December 24, 2001–could not withstand scrutiny.

> That Allen at one time was involved in a dispute with her manager could hardly justify TSI permanently excluding Allen from consideration for a manager position, particularly given TSI's consideration of less qualified individuals for the job and the complete absence of written criteria for the position. . . .
>
> Other than vague allegations of complaints about Allen's behavior, there is absolutely no evidence in Allen's personnel file or TSI's written documents to reveal that Allen's behavior was so egregious or improper. Indeed, TSI's willingness to continue to pay Allen $6.25 an hour, more than that paid to other cashiers, is indicative of TSI's opinion that Allen was a valued employee.

Allen, 375 F. Supp. 2d at 803.

We agree with the district court. TSI cannot persuasively contend the Lovell-Allen argument which occurred eleven months earlier could provide the sole basis for not promoting Allen in November 2002. Allen's length of service with TSI also belies TSI's assertion Allen was a problem employee. The record shows Allen worked for TSI for over two and one-half years, which appears to be a relatively long period of employment at TSI. Indeed, during the eleven-month period from December 2001 to November 2002, at least three management employees–Lovell, White, and Morgan–were fired. A fourth employee, Smith, quit when Bearden confronted Smith about Smith's argument with Morgan. It certainly can be inferred from this record TSI would not hesitate to dismiss an insubordinate employee, yet the record shows no evidence, other than the December 24 incident, Allen was ever reprimanded or

otherwise disciplined for insubordination. In fact, at trial Bearden admitted Allen's personnel file contained no information about any misconduct, including the December 24 argument with Lovell, and no negative comments of any other kind. The lack of any disciplinary record in Allen's personnel file undermines TSI's proffered testimony suggesting Allen could be difficult.

TSI's hiring and promotion practices coupled with Allen's work history provide ample support for the district court rejecting as pretextual TSI's non-discriminatory reason for not promoting Allen to the McGehee store manager position in November 2002. See Winbush v. State of Iowa, by Glenwood State Hosp., 66 F.3d 1471, 1479-80 (8th Cir. 1995) (concluding the employer's discretionary promotion policies discouraged promotional opportunities for black employees and "reflected systematic and purposeful discriminatory treatment" based on race (internal quotation omitted)).

The district court did not clearly err in determining TSI discriminated and retaliated against Allen on the basis of race by not promoting her in November 2002.

### 3.    Other Claims

TSI challenges several additional fact findings by the district court arguing they are either unsupported by the record, contrary to the record, or otherwise improper. TSI asserts the district court's findings appear to be outcome determinative rather than based on the record. TSI asks this court to reject those findings and reverse the district court. TSI also challenges several of the district court's evidentiary rulings as erroneous and prejudicial. Lastly, TSI contends the district court was biased in Allen's favor, which unfairly prejudiced TSI and warrants a new trial. We review for clear error the district court's factual findings, Bone Shirt v. Hazeltine, 461 F.3d 1011, 1017 (8th Cir. 2006), and for an abuse of discretion the district court's evidentiary rulings, Grayson v. Ross, 454 F.3d 802, 812 (8th Cir. 2006).

-13-

TSI demonstrates, at most, it disagrees with the district court's factual findings or characterizations, but falls short of showing those factual findings stem from some result-oriented bias of the district court. TSI submits no evidence TSI moved to recuse the judge or questioned the district court's impartiality during trial. Thus, TSI waived that argument on appeal. See Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003) (holding under 28 U.S.C. § 455(a) that a claim for judicial recusal will not be considered unless timely made).

Nonetheless, even if the argument has not been waived, TSI fails to rebut the presumption of impartiality. Pope v. Fed. Express Corp., 974 F.2d 982, 985 (8th Cir. 1992) ("A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise."). TSI's evidence consists of vague allegations the district court assisted Allen's counsel, interjected itself into the questioning of witnesses, and allowed Allen to introduce certain evidence, while prohibiting TSI from doing the same. Taken in context, these allegations are no more than challenges to the district court's evidentiary rulings and clearly do not rise to the level of bias requiring a new trial. See id. (finding two statements made by the presiding judge as evidence of bias could "at best be characterized as weak and inconclusive"). Among the trial judge's duties are not only impartiality, but the pursuit of a fair trial for all the parties and a search for the truth, which may, within reason, require some questions directed by the court to the witnesses. Thus, we conclude the district court did not clearly err in making the challenged factual findings and did not abuse its discretion in making the challenged evidentiary rulings.

## C. Advisory Jury

TSI claims it was "whipsawed" by the district court's erroneous decision to call a jury with only three-days' notice, rather than proceed with a bench trial. TSI asserts it hurriedly prepared jury instructions, voir dire, new opening and closing statements, and it had to prepare exhibits for presentation to the jury. TSI submits it would never

have altered its presentations and arguments had the trial remained a bench trial. Therefore, TSI maintains it was prejudiced and a new trial is warranted.

The district court based its decision to call an advisory jury on Fed. R. Civ. P. 39. Rule 39(c) states: "In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury." In denying TSI's motion for a new trial based on the district court's alleged error in ordering a jury trial, the district court explained:

> Here, neither party requested a jury trial. Counsel for the parties were at least prepared for a trial to the Court when the Court advised them that the case would be tried to a jury. The parties have not indicated how they were prejudiced by the Court . . . deciding the issues or what they would have done differently had the case been a bench trial. Indeed, it is likely that counsel would have prepared less for a bench trial than for a jury trial.

> A new trial would be a waste of judicial resources. The Court has heard the evidence, reviewed the record and has made an independent determination of the issues.

Allen, 375 F. Supp. 2d at 806.

"Rule 39(c) does not expressly require advance notice to the parties of the court's intention to treat the jury as advisory," although such notice is preferable. Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co., 195 F.3d 368, 375 (8th Cir. 1999). Moreover, "failure to give advance notice alone, absent some demonstrable prejudice to the complaining party, would not be a basis for reversal." Id. The district court recognized its error in sua sponte ordering a jury trial, vacated the jury verdict, and treated the jury as advisory. The district court then made its own findings of fact and conclusions of law. TSI has not shown more than a mere failure by the district court to give more advance notice of the advisory jury trial and the

-15-

resulting pressure and inconvenience of hurriedly preparing for a jury trial on three-days' notice. TSI fails to show it was prejudiced by the district court's decision to proceed with an advisory jury, and therefore is not entitled to a new trial.

### D. Damages

#### 1. Back Pay

TSI claims the district court erred in calculating Allen's back wages. TSI argues Allen's back wages award should be reduced by $2,950.00, because the district court had no basis for calculating Allen's manager pay at $450.00 a week, given the testimony established most managers made $400.00 per week. TSI also asserts the district court made mathematical errors in calculating Allen's lost wages for five weeks in 2002.

We review the district court's award of back pay for clear error. Ledbetter v. Alltel Corp. Serv., Inc., 437 F.3d 717, 724 (8th Cir. 2006). In awarding Allen back pay the district court stated:

> Allen is entitled to back pay representing the amount she would have earned as assistant manager of the Dumas store less the amount she earned and as manager of the McGehee store less the amount she earned until she left her employer on January 2, 2004. According to testimony at trial, assistant managers earn $6.25 an hour and work 40 hours; store managers earned between $400 and $450 per week for 50 hours of work. The Court will assume, as Allen was already earning a higher rate of pay as a cashier, that she would have received $450.00 per week. Also, TSI did not object to Allen's position that she would have been entitled to $450.00 per week as a manager.

Allen, 375 F. Supp. 2d at 808. Both Bearden and Cobb testified managers received between $400 to $450 per week, and Bearden testified store managers typically worked fifty hours per week. The district court reasonably concluded Allen already earned $6.25 per hour as a cashier and probably would have earned the higher amount

($450 per week) as a manager.  Accordingly, the district court did not clearly err in determining Allen would have made $450 per week as a store manager.

We do agree with TSI that the district court made mathematical errors in calculating Allen's back pay.  First, the district court stated Allen would have earned $11,000.00 as an assistant manager from January 15, 2002, through November 22, 2002.  However, using the district court's stated formula–$6.25 per hour at 40 hours per week for 45 weeks–we calculate $11,250.00.  Second, the district court found Allen was entitled to an additional $2,700.00, representing the five weeks she should have been promoted to McGehee store manager in 2002.  Again, using the district court's stated formula–5 weeks at $450 per week–we calculate $2,250.00.  Finally, the district court made a $0.05 error when adding the 2002 back pay to the 2003 back pay. The correction of these three mathematical errors reduces Allen's total back pay award by $200.05.  We, therefore, modify the district court's award of back pay by reducing it to $15,916.21, plus prejudgment interest.  The back pay award is affirmed in all other respects.

### 2.    Punitive Damages

TSI also challenges the district court's award of punitive damages arguing the evidence does not support an award of punitive damages.  Citing BMW of North America, Inc. v. Gore, 517 U.S. 559, 581 (1996), TSI further contends the district court's punitive damages award of $75,000.00 is constitutionally impermissible and violates due process.

"On appeal, the district court's determination of punitive damages is reviewed under an abuse of discretion standard.  However, when passing on a district court's determinations concerning the constitutionality of the punitive award, we use a de novo standard of review."  Conseco Fin. Servicing Corp. v. N. Am. Mortgage Co., 381 F.3d 811, 823 (8th Cir. 2004) (internal citation omitted).

"[P]unitive damages are available in claims under Title VII . . . [where] the employer has engaged in intentional discrimination *and* has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" Ogden v. Wax Works, Inc., 214 F.3d 999, 1008 (8th Cir. 2000) (emphasis added) (quoting Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 529-30 (1999)). "'The terms "malice" and "reckless" ultimately focus on the actor's state of mind,' and '"malice" or "reckless indifference" pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination.'" Canny v. Dr Pepper/Seven-Up Bottling Group, Inc., 439 F.3d 894, 903 (8th Cir. 2006) (quoting Kolstad, 527 U.S. at 535).

In awarding punitive damages, the district court found (1) TSI had no employment policies; (2) TSI did not hire a black manager until after two other black employees, Dianne Darrough (Darrough) and Theresa Sharkey (Sharkey) filed discrimination claims; (3) TSI had eighty-two stores in 2003 and no black managers; (4) TSI did not promote Darrough and Allen; (5) TSI was on notice of claims of discrimination because three charges of discrimination had been filed; (6) despite the charges, TSI continued its practice of not posting vacancies; and (7) the EEOC found TSI discriminated against Sharkey. Allen, 375 F. Supp. 2d at 808-09.

The district court's stated reasons support a finding of discrimination, but do not support an award of punitive damages. While not a sufficient, legitimate non-discriminatory reason for TSI's failure to promote Allen in January and November 2002, Allen's acts of insubordination are enough to disprove Allen's claim TSI acted with malice or reckless indifference. The record demonstrates TSI typically terminated employees for acts of insubordination. Indeed, between December 2001 and November 2002, at the Dumas and McGehee stores alone, TSI terminated three managers, all of whom were Caucasian, for various acts of insubordination. On the other hand, despite Allen's act of arguing with Lovell in an unprofessional manner on

-18-

December 24, 2001, TSI gave some deference to Allen and transferred her, rather than terminating her as TSI terminated Lovell.

In addition, the record depicts TSI as a rapidly growing company with inadequate, rather than malicious, personnel procedures. Cobb testified when he started with TSI in 1993, TSI had only one store, and by 2003, TSI had eighty-two stores. Cobb further testified TSI opened eleven stores during the eight-week period beginning December 15, 2001, which suggests most of TSI's growth occurred after 2002. Cobb explained the focus of the business was on profits rather than on the make-up of store personnel. Cobb also explained in 2001 and 2002, to advance at TSI, an employee would ask to be considered for a management position. Although TSI's rapid growth and promotion practices fail to justify the racial disparity within TSI's management personnel, those practices demonstrate justifiable business reasons or ineptness and not racial malice or reckless indifference directed toward Allen. Neither Allen nor the record before us demonstrates TSI acted with the requisite state of mind to support an award of punitive damages.

The district court erred in granting punitive damages. Because we conclude no punitive damages award is warranted, we need not address TSI's due process claim.

### E.    Attorney Fees

In Allen's motion for attorney fees and costs, she requested an award of $107,750.00 in fees for her attorney, Eugene Hunt (Hunt); $9,540.00 in fees for her attorney, Sandra Harris (Harris); and $4,122.28 in costs. Allen requested hourly rates of $200.00 for Harris and $250.00 for Hunt. Allen claimed Harris spent 47.7 hours and Hunt spent 431 hours on her case. The district court found Harris's hourly rate was unreasonable, and Hunt's claimed hours were excessive and lacked the required specificity. Therefore, the district court reduced Harris's hourly rate to $175.00 per hour and disallowed 160 of Hunt's claimed hours. Once the district court made these

adjustments, it awarded $67,750.00 in fees for Hunt and $7,155.00 for Harris, for a total of $74,905.00 in fees and $4,122.28 in costs. The district court declined to make any further adjustments.

TSI requests this court vacate the attorney fees award because the district court erred in finding Allen was a prevailing party. In the alternative, TSI asserts although the district court's lodestar determination is lower than the amount requested by Allen, the award is still significantly higher than what is normally awarded in discrimination claims. TSI claims the district court's failure to adjust the award of attorney fees and failure to consider the Johnson[3] factors constitute an abuse of discretion.

TSI maintains Allen was only successful on three of her eight claims, and, thus, the lodestar should be reduced based on Allen's limited success. TSI submits Allen's successes are further limited when her damages are compared against the court's award. Allen submitted exhibits stating her compensatory damages and back pay exceeded $233,000.00, and asked the jury to award her $1.5 million in punitive damages. The district court awarded Allen only $23,616.21 in back pay and compensatory damages and $75,000.00 in punitive damages—amounts which total less than one-tenth of the amount she requested. Therefore, TSI argues, given Allen's limited success, a substantial reduction in her lodestar amount is appropriate. TSI

---

[3]Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 90 (1989) (establishing twelve factors courts should consider in awarding attorney fees, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the attorney's preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases).

claims, when all of the Johnson factors are weighed, they also decidedly favor reducing the lodestar amount. For those reasons, TSI urges $50,000.00 would be an appropriate amount for Allen's attorney fee award.

"We review the district court's award of attorney's fees for abuse of discretion." Simpson v. Merchs. & Planters Bank, 441 F.3d 572, 581 (8th Cir. 2006). First, we consider whether Allen was the prevailing party in this litigation. "To be a prevailing party, [Allen] must 'succeed on any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit.'" Forest Park II v. Hadley, 408 F.3d 1052, 1059 (8th Cir. 2005) (quoting Farrar v. Hobby, 506 U.S. 103, 109 (1992)). Allen was the prevailing party in this case because she obtained judgment in her favor on two of her claims. Moreover, while not receiving the damages sought, she recovered substantial damages and received some of the benefit sought in bringing the suit.

The district court's lodestar calculations are not challenged by TSI. The district court considered the twelve factors outlined in Johnson to calculate the final fee award and did not find any basis for adjusting the lodestar. The district court carefully scrutinized the affidavits and billing statements provided by Allen's counsel, and significantly reduced the requested $117,290.00 in fees to reach a reasonable fee award of $74,905.00. We find no abuse of discretion in the district court's decision and thus affirm the attorney fee award.

## III. CONCLUSION

We modify the district court's award of back pay to $15,916.21 with prejudgment interest and vacate the punitive damages award. We affirm the judgment of the district court in all other respects.

-21-

SMITH, Circuit Judge, concurring in part and dissenting in part.

Though I agree with much of the majority's analysis, I cannot concur with its holding that the district court abused its discretion in awarding punitive damages to Allen.

We review a district court's determination of punitive damages for an abuse of discretion, *Conseco Fin. Servicing Co. v. N. Am. Mortgage Co.*, 381 F.3d 811, 823 (8th Cir. 2004), meaning that we will not reverse the district court unless its decision is "grossly unsound, unreasonable, or illegal." *Black's Law Dictionary* 10 (7th ed. 1999).

After thoroughly reviewing the record, I cannot conclude that the district court's award of punitive damages was "grossly unsound, unreasonable, or illegal." First, TSI makes virtually no argument as to why the district court abused its discretion in awarding punitive damages. It devotes only one paragraph in its 65-page brief to the issue. Furthermore, within this one paragraph, TSI fails to cite a single authority for the proposition that Allen's misconduct "demonstrates she should not be awarded any compensatory or punitive damages." The only cases relied on by TSI relate to the constitutionality of the punitive damages award, not to its availability.

Second, our case law supports affirmance of the punitive damages award. "Punitive damages may be recovered for employment discrimination if the employer engages in intentional discrimination with malice or with *reckless indifference* to the individual's protected rights." *Ross v. Kan. City Power & Light Co.*, 293 F.3d 1041, 1048 (8th Cir. 2002) (citing *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529–30 (1999)) (emphasis added). "The terms 'malice' and 'reckless' ultimately focus on the actor's state of mind, and 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*,

-22-

439 F.3d 894, 903 (8th Cir. 2006) (internal quotations and citation omitted). The plaintiff is not required "to establish egregious misconduct on the part of an employer in order to have punitive damages submitted to the jury." *Ross*, 293 F.3d at 1048. When an employer "deliberately turn[s] a deaf ear to discriminatory conduct," punitive damages may be warranted. *Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1161 (8th Cir. 2003).

For example, we have previously held that a district court properly submitted punitive damages to the jury "because it found that the evidence showed that [the employer] occasionally took 'special efforts' on behalf of white applicants, including making further inquiry when their applications did not initially meet minimum qualifications." *Ross*, 293 F.3d at 1048. Additionally, the plaintiff presented evidence that the employer "may have passed over qualified internal black candidates in favor of new college graduates who were white." *Id*.

Just as the plaintiff in *Ross* presented evidence that the employer was passing over internal black candidates in favor of whites, so too did Allen present evidence that, after terminating Morgan, Bearden hired Goggans, a white female, and non-TSI employee, as the new store manager, passing over Allen for the position. In addition, Allen presented evidence that while she was demoted and transferred for arguing with Lovell, TSI took no action against Morgan—a white employee who engaged in similar conduct—and, in fact, promoted Morgan after the incident with Smith.[4] Finally, the record demonstrates that TSI was on notice that it may be acting in violation of federal law based on several EEOC charges filed against it. Specifically, the district court found that:

---

[4]Smith quit before any action could be taken.

Allen had filed an EEOC charge in March, 2002, Theresa Sharkey[5] had filed a charge in March, 2002, and Diane Darrough[6] had filed a charge in August, 2002. Thus, as of November 2002, when the manager position came open, TSI was on notice that Allen wanted a managerial position and that TSI did not have any black managers. Allen had even filed a race discrimination action. TSI still did not post the job vacancy; still had not written employment policies or job standards. It went outside the company to recruit someone who had not had any experience with the company, while it had well qualified black employees with managerial experience.

*Allen v. Tobacco Superstore, Inc.*, 375 F. Supp. 2d 796, 809 (E.D. Ark. 2005). Additionally, the EEOC found evidence that TSI "consistently discriminated against

---

[5]Theresa Sharkey was hired as a cashier at the TSI in Blytheville, Arkansas, in January 2001. She had over six years' experience as a manager of a grocery store. Assistant managers and managers were hired during the ten months that Sharkey worked at TSI who had far less experience than she.

[6]Darrough had extensive management experience. She was hired as an assistant manager at the Star City, Arkansas, TSI store in February 2002. The Star City store manager, who was white, was fired for stealing a store deposit in July 2002. Darrough was acting manager for about a month; however, rather than promote Darrough, Bearden and Cobb brought in the manager of the Monticello, Arkansas, store, Myrtis Thompson, who is white, to manage both the Star City and Monticello stores. Bearden's reason for not promoting Darrough was that she did not feel Darrough had enough training. However, by the time that the manager position became permanent, Darrough had been with TSI for several months and had more direct experience than other managers who were hired from without. Furthermore, an additional assistant manager, who is white, was hired at the Star City store to help Thompson. Thompson was the only manager who had to manage two stores, and Star City was the only store with two assistant managers. Darrough was ultimately promoted to manager of the Star City store, however, it was only after she filed a lawsuit alleging discrimination.

Blacks as a class by denying them promotions to assistant manager and manager positions." *Id.*

For the foregoing reasons, I respectfully dissent.

_____